UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAX ACCESS, INC.                                       CIVIL ACTION

VERSUS                                                 NO. 15-1728

THE GEE CEE COMPANY                                    SECTION "B"(1)
OF LA, INC., ET AL

ORDER AND REASONS

Before the Court are three motions: 1) a Rule 12(b)(6) motion to dismiss the fraud claims of plaintiff Max Access, Inc. ("Max Access") by defendants The Gee Cee Company of LA, Inc. and Gibson Chigbu ("defendants"); 2) plaintiff's motion to strike defendants' Rule 12(b)(6) motion as untimely; and 3) plaintiff's Rule 12(b)(6) motion to dismiss defendants' counterclaims. *See* Rec. Docs. 11-13. For the following reasons,

   **IT IS ORDERED** that plaintiff's motion to strike (Rec. Doc. 13) is **DENIED**.

   **IT IS FURTHER ORDERED** that defendants' motion to dismiss (Rec. Doc. 12) is **GRANTED**.

   **IT IS FURTHER ORDERED** that plaintiff's motion to dismiss (Rec. Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.

   I.   BACKGROUND

   The following is a brief summary of the allegations in plaintiff's May 21, 2015, complaint. Plaintiff and defendants entered an agreement for the supply of scaffolding equipment, along with an application for credit, related to a construction project

1

in Orleans Parish. *See* Rec. Doc. 1 at 3. Starting at some point in 2013, defendant failed to pay for and/or return certain equipment supplied by plaintiff. *See id.* at 4. In March 2014, the parties attempted to settle all outstanding balances and equipment returns; however, the defendants failed to actually return equipment, such that plaintiff issued a number of additional invoices through September 2014. *See id.* at 4-5. Plaintiff claims that the total amount due by defendants is $78,196.38. *See id.* at 5. Plaintiff asserts a variety of contract claims. *See id.* at 5-10. Plaintiff also alleges that defendants committed fraud by concealing and making misrepresentations about plaintiff's equipment held by defendants and then attempting to induce plaintiff into waiving plaintiff's rights and remedies. *See id.* at 6-7.

On July 23, 2015, defendants filed an answer and on July 27, 2015,—before any party took further action in the case—filed an amended answer. *See* Rec. Docs. 9 and 10. The amended answer includes a number of defenses, including lack of subject matter jurisdiction[1] and failure to state a claim. *See* Rec. Doc. 10 at 1-2. The later defense makes reference to a Rule 12(b)(6) motion to

---

[1] The Court notes that defendants' amended answer contends that the "real amount in controversy" is under $75,000; however, defendants do not seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. *See* Rec. Doc. 10 at 1. The Court notes some irregularities in the invoices attached by plaintiff to support their claim for $78,196.38. *See* Rec. Doc. 1-5 at 21, 29 (total amounts due not stated in invoice). However, in the absence of a motion by defendants offering proof otherwise, the Court is satisfied that the pleadings facially reflect an amount in controversy over $75,000.

dismiss plaintiff's fraud claims for failing to comply with Rule 9(b). *See id.* The amended answer also contains a counterclaim against plaintiff. *See id.* at 6–7. The counterclaim alleges that plaintiff not only breached a March 12, 2014, settlement agreement, but also thereafter submitted numerous invoices to defendants over a six-month span, knowing they were frivolous. *See id.* Defendants contend that plaintiff is subject to Rule 11(b) sanctions, has committed "abuses of process," and violated Louisiana unfair trade practices law. *See id.*

On July 28, 2015, plaintiff and defendants each filed a motion to dismiss. *See* Rec. Docs. 11 and 12. Plaintiff seeks dismissal of all defendants' counterclaims. *See* Rec. Doc. 11. Defendants seek dismissal of all of plaintiff's claims sounding in fraud. *See* Rec. Doc. 12. On July 28, 2015, defendants filed a motion to dismiss all fraud claims for failure to meet Rule 9(b)'s particularity requirement. *See* Rec. Doc. 12. The following day, plaintiff filed a Rule 12(f) motion to strike defendant's motion to dismiss as untimely. *See* Rec. Doc. 13.

## II. <u>STANDARD OF REVIEW</u>

### A. Rule 12(f) Motions to Strike

Rule 12(f) permits a Court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P 12(f). A motion to strike will be granted when allegations in a pleading are prejudicial or

3

immaterial to the case. *See Jolie Design & Décor, Inc. v. Cece Caldwell's Paints, LLC*, Civ. A. 12-2387, 2013 WL 3293691 *2 (E.D.La. June 28, 2013) (J. Berrigan). A district court exercises reasonable discretion in considering motions to strike. *See Estate of Thompson v. Sun Life Assur. Co. of Canada*, 354 Fed.Appx. 183, 189 (5th Cir. 2009) ("We review a motion to strike for abuse of discretion") (citing *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007)).

B. Rule 12(b)(6) Motions to Dismiss

Generally speaking, a Rule 12(b)(6) motion should be granted when the complaint does not state a viable claim for relief. *See Great Plains*, 313 F.3d at 312. The complaint must be plausible on its face. *See Doe*, 528 F.3d at 418 (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). A court construes the pleadings liberally and accepts all well pleaded facts as true. *See Great Plains*, 313 F.3d at 312-13. A court disregards conclusory allegations and unwarranted deductions of fact. *See id.* at 313.

For claims alleging fraud, a Rule 12(b)(6) motion should be granted if the complaint fails to plead the conduct constituting fraud with particularity. FED. R. CIV. P 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The claim, at a minimum, must set forth the "who, what, when, where, and how" of the alleged fraud. *See U.S. ex rel. Shupe v. Cisco Systems, Inc.*, 759 F.3d 379, 382 (5th Cir. 2014).

4

A claim need not provide the level of detail necessary to prevail at trial. *See U.S. ex rel. McLain v. Flour Enterprises, Inc.*, Civ. A. 06-11229, 2013 WL 3899889 *4 (E.D.La. July 29, 2013) (citing *U.S. ex rel. Grubbs v. Kanneganti.* 565 F.3d 180, 190 (5th Cir. 2009). "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading." *See Grubbs*, 565 F.3d at 186.

### III. DISCUSSION

#### A. Plaintiff's Motion to Strike

As an initial matter, the Court considers plaintiff's motion to strike. Plaintiff contends that defendant's motion to dismiss was untimely, because it was filed one day after it filed an amended answer that itself had been filed four days following defendant's initial filing of an answer. *See* Rec. Doc. 13-1 at 1-2. The Court agrees with defendants that plaintiff's motion to strike borders on frivolous. *See* Rec. Doc. 19. The grounds for defendants' motion to dismiss are explicitly stated as a defense in defendants' amended answer, which also makes reference to "the motion to dismiss under Rule 12(b)(6)." Rec. Doc. 10 at 1. Defendants filed the motion to dismiss within a day of filing the amended answer. *See* Rec. Docs. 10 and 12.

While the text of Rule 12(b) apparently requires all 12(b) motions to be filed before a responsive pleading, courts have permitted deviations in the context of Rule 12(b)(6) motions centered on Rule 9(b). *See Shushany v. Allwaste, Inc.*, 992 F.2d

5

517, 250 n.4 (5th Cir. 1993). The Court finds plaintiff's motion meritless where defendants at least effectively complied with Rule 12(b)'s requirements, defendants' amended answer clearly put plaintiff on notice of defendants' Rule 9(b) defense, and the amended answer also references a motion to dismiss based on Rule 9(b). As always, the Court advises the parties to carefully review and follow applicable rules of procedure; however, the Court will not delay consideration of defendants' motion due to an insubstantial procedural error of this kind. Accordingly, the Court denies plaintiff's motion to strike.

B. Defendant's Motion to Dismiss

Moving to the merits of defendants' motion to dismiss plaintiff's fraud claims, the Court looks to see whether plaintiff's complaint adequately alleges the "who, what, when, where, and how" of the fraud claim. Here, the complaint states that in March 2014 the defendants promised to return outstanding equipment supplies and pay one lump sum to satisfy all plaintiff's claims. *See* Rec. Doc. 1 at 4. Plaintiff alleges that defendants did so "in exchange for various consideration from [plaintiff], in an apparent effort to induce [plaintiff] into an agreement." *See id.* at 4-5. Plaintiff alleges that defendants presented documents to plaintiff in furtherance of that agreement "purporting to extinguish or limit [plaintiff's] rights in exchange for return of [plaintiff's] property, specifically including but not limited to

6

a baseless writing purporting to remit [plaintiff's] rights to assert a privilege against the [construction] project in view of Defendants' nonperformance and outstanding obligations to [plaintiff]." *See id.* at 5. Plaintiff alleges that it reasonably relied upon defendant's promises and representations, but defendant did not follow through, nor did it ever intend to. *See id.*

The complaint later provides the additional factual allegations that defendants were fraudulent in: a) convening a meeting with plaintiff to convince plaintiff that defendants had less of plaintiff's equipment than they actually did; b) intentionally concealing and misrepresenting how much of plaintiff's property was lost, stolen, or destroyed while in defendant's possession; c) drafting a "fraudulently induced agreement" to strip plaintiff of its rights under the contract; d) engaging in a "knowing scheme" to defraud plaintiff by not performing under the settlement agreement; and e) engaging in "predatory and exploitive practices." *See* Rec. Doc. 6-7.

The Court concludes that plaintiff's complaint fails to particularly plead the alleged fraud of defendants. The complaint provides too vague a summary of the supposedly fraudulent conduct of defendants to survive a Rule 12(b)(6) motion to dismiss. It references meetings without providing dates, names, or what occurred during the meeting--information plaintiff would likely

7

know since its employees presumably attended. The complaint makes only vague references to misrepresentations, without stating what the misrepresentations were and who made them. Simply put, plaintiff's complaint does not sufficiently put defendants on notice of the "who, what, when, where, and how" of the fraud claim.

The Court grants defendants' motion to dismiss plaintiff's fraud claims; however, it notes that defendants' did not specify whether they sought dismissal with or without prejudice. The Court will dismiss the fraud claims without prejudice and afford plaintiff the opportunity to amend its complaint, if appropriate.

C. Plaintiff's Motion to Dismiss

Finally, the Court turns to plaintiff's motion to dismiss defendants' counterclaims. The essence of defendants' counterclaim is that the March 2014 settlement agreement in fact settled all disputes between the parties and that plaintiff's subsequent invoicing and lawsuit were frivolous and constituted an unfair trade practice. *See* Rec. Doc. 10 at 6-7. Defendants' counterclaim seeks relief for Rule 11(b) violations, "abuses of process," and violation of Louisiana unfair trade practices law. *See id.*

Defendants' briefing on the motion states that they "will voluntarily dismiss the Rule 11(b) claim and believe that the abuse of process claim is subsumed within the Unfair Trade Practices Act allegations." *See* Rec. Doc. 25 at 1. While defendants have not formally sought to voluntarily dismiss their Rule 11(b) and abuse

8

of process claims, the Court understands defendants' as offering no opposition to plaintiff's motion to dismiss with prejudice as to the two claims. Accordingly, the Court will dismiss the Rule 11(b) and abuse of process claims with prejudice.

Defendants do, however, stand by their state law claim, contending they have adequately pleaded a claim under the Louisiana Unfair Trade Practices Act ("LUTPA").[2] *See id.* Plaintiff essentially puts forward four independent grounds for dismissing the claim: 1) that defendants lack standing to bring a claim under LUTPA; 2) that the defendants have failed to state a claim under LUTPA; 3) that the claim is perempted; and 4) that the Louisiana Attorney General has not taken needed action in order for treble damages to be available. *See* Rec. Doc. 11-1 at 8. The Court considers each in turn.

i. Standing

Plaintiff initially argued that defendants do not have standing to raise a LUTPA claim, because plaintiff's alleged misconduct ties to a commercial, not consumer transaction. *See* Rec. Doc. 11-1 at 10. A subsequent filing by plaintiff retreats somewhat on the argument, clarifying that there is, in fact a

---

[2] Defendants' memorandum opposing plaintiff's motion to dismiss contains two affidavits of employees of The Gee Cee Company of LA, Inc. *See* Rec. Docs. 25-1 and 25-2. Plaintiff correctly contends that is inappropriate for the Court to reference either of these affidavits, as "[g]enerally, when ruling on a Rule 12(b)(6) motion, the district court may not look beyond the pleadings." *Stockwell v. Kanan*, 442 Fed.Appx. 911, 913 (5th Cir. 2011) (citing *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)). Accordingly, the Court assesses the merits of plaintiff's motion to dismiss without reference to the affidavits.

Louisiana circuit split on the issue and that a plurality opinion of the Louisiana Supreme Court advocates a broad reading of who may sue under LUTPA . *See* Rec. Doc. 23 at 1-2 (citing *Cheramie Services v. Shell Deepwater Production*, 2009-1633, 35 So. 3d 1053 (La. 4/23/10)). Plaintiff argues, however, that the unsettled shift in Louisiana law should not disturb existing Fifth Circuit precedent on the issue. *See id.* at 3-4.

Over two decades ago, the Fifth Circuit ruled that LUTPA provides a cause of action only to business competitors and those injured by transactions involving consumers buying for personal, family, or household use. *See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 226 (5th Cir. 1991). While the Fifth Circuit has generally reiterated this interpretation of LUTPA, only lower federal courts have directly reaffirmed the ongoing validity of *Wang Labs. See Tubos de Acero de Mexico, S.A. v. Amer. Intern. Inv. Corp, Inc.*, 292 F.3d 471 (5th Cir. 2002); *see also, e.g.*, *Lambert v. Bd. Of Comm'rs*, Civ. A. No. 05-5931, 2009 WL 152668 *8 (E.D.La. Jan. 22, 2009) (J. Vance).

In 2010, a plurality of the Louisiana Supreme Court in *Cheramie* reasoned that LUTPA is meant to provide relief to more than just business competitors and direct consumers. *See* 35 So.3d at 1058. The *Cheramie* court specifically noted the existence of a lower court split on exactly who is covered by LUTPA. *See id.* at 1056. The Fifth Circuit has not had occasion to revisit its holding

10

in *Wang Labs*. Since *Cheramie*; however, federal district courts have split on whether *Cheramie* broadens the applicability of LUTPA to dealings between businesses. *Compare Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602 (E.D. La. Feb. 12, 2015) (J. Vance) (finding that a business owner has standing to sue a hunting organization under LUTPA) *and Burgers v. Bickford*, Civ. A. No. 12-2009, 2014 WL 4186757 (E.D. La. Aug. 22, 2014) (J. Zainey) (finding that a construction lender has standing to sue developers under LUTPA), *with Baba Lodging, LLC v. Wyndham Worldwide Operations, Inc., Et al*, Civ. A. No. 10-1750, 2012 U.S. Dist. LEXIS 36891 (W.D. La. Mar. 19, 2012) (finding that a franchisee of a hotel does not have standing to sue a corporation managing a nationwide reservation system for the franchisor). Additionally, it appears that at least some Louisiana state courts of appeals have reconsidered their prior interpretations of LUTPA standing in the wake of *Cheramie*. *See Bogues v. Louisiana Energy Consultants, Inc.*, 46,434, 71 So.3d 1128 (La. App. 2d Cir. 8/10/11); *see also Granger v. Christus Health Cent. La.*, 2011-85, 97 So.3d 604 (La. App. 3d Cir. 7/20/12).

Though *Cheramie* may not be binding upon the Court, the plurality opinion, the on-going circuit split in Louisiana courts of appeals, and recent decisions of this District Court lead the Court to conclude that defendants have standing to sue under LUTPA

11

in this case.[3] Defendants were in a contractual relationship for the provision of scaffolding equipment with plaintiff. *See* Rec. Doc. 1. Defendants essentially claim that plaintiff engaged in an unfair billing practice, by first purporting to settle all outstanding claims and then soon thereafter submitting additional bills for substantial sums on a regular basis. *See* Rec. Doc. 6–7. Under the expanded understanding of LUTPA standing signaled to in *Cheramie*, it would seem the statute applies to defendants' claim.

   ii.    Failure to State a Claim

Plaintiff contends that defendants have failed to state a LUTPA claim, because they do not allege an "ascertainable loss." *See* Rec. Doc. 11-1 at 10-11. Here, defendants' complaint alleges that plaintiff engaged in an unfair practice by submitting repeated frivolous bills to defendants and later initiating litigation. *See* Rec. Doc. 10 at 6-7. Plaintiff counters these allegations "articulate no facts whatsoever describing any violation of [LUTPA], and present no claim of an ascertainable loss." Rec. Doc. 11-1 at 10. Plaintiff offers no precedent to support the assertion that an allegation of over $75,000 in frivolous invoicing does not constitute an ascertainable loss under LUTPA. While plaintiff

---

[3] The Court notes that plaintiff's initial memorandum addresses the LUTPA claims of The Gee Cee Company of LA, Inc. and Gibson Chigbu separately; however, its supplemental memorandum clarifying the state of LUTPA law does not. *Compare* Rec. Doc. 11-1 at 10–11, *with* Rec. Doc. 23 at 1–4. Defendants' memorandum in opposition addresses the merits of each LUTPA claim in cursory fashion. *See generally* Rec. Doc. 25. In the absence of sufficient briefing and particularly at this early stage in the litigation, the Court leaves aside for now the issue of whether both defendants may assert a LUTPA cause of action.

further argues in its memorandum that the dispute constitutes a normal business pursuit and that plaintiff acted in good faith throughout the dispute, these contentions are outside the pleadings and not appropriately addressed on a motion to dismiss.

  iii.    Peremption

Plaintiff next argues that the time period for defendant to file a LUTPA claim has passed. Defendants' complaint alleges that plaintiff engaged in an unfair practice by breaching a March 12, 2014, settlement agreement and thereafter submitting repeated frivolous bills to defendants, followed by the initiation of litigation. *See* Rec. Doc. 10 at 6–7. Because defendants' claim centers on an alleged breach of a March 12, 2014, settlement agreement and because defendants did not raise their LUTPA claim until July 23, 2015, plaintiff argues that defendants' claim clearly falls outside LUTPA's one-year peremption period. *See* Rec. Docs. 11-1 at 16–17 and 23 at 5–7. Defendants counter that the *prescriptive* period never ran, because plaintiff continued to "trot[] out its invoices" after breaching the March 12, 2014, agreement and filed the instant lawsuit. *See* Rec. Doc. 25 at 6–7. Furthermore, defendants contend that even if March 12, 2014, was the start of the *prescriptive* period, under Louisiana civil procedure, defendants filed their counterclaim within 90 days of plaintiff filing its complaint and thereby filed their claim within the extended "prescriptive/peremption period." *See id.* at 7–9.

13

LUTPA provides that "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La. R.S. § 51:1409(E). The Louisiana Supreme Court has not ruled as to whether this provision implicates preemption or prescription; however, most lower state courts and decisions of this District Court interpret § 51:1409(E) as a peremptory provision. *See Miller v. ConAgra, Inc.*, 2008-0021, 991 So.2d 445, 456 (La. 9/8/08); *see generally Melancon v. Countrywide Bank*, Civ. A. No. 10-1723 2011 WL 692051 *8 (E.D. La. Feb. 18, 2011). This means the limitation period in LUTPA cannot be suspended or interrupted. *See Melancon*, 2011 WL 692051 at *8.

Louisiana lower courts have recognized, however, that a peremptory period does not begin where the alleged violation of LUTPA is continuous. *See id.* In *Miller v. ConAgra, Inc.*, the Louisiana Supreme Court noted that "a continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." 2008-0021 at *16, 991 So.2d 445, 456. Instances where courts have found continuous torts in a business transaction setting typically involve one party continuously violating a duty owed to another party. *See Fox v. Dupree*, 93 CA 0120, 633 So.2d 612 (La. App. 1st Cir. 12/29/1993); *see also Carriere v. Jackson Hewitt Tax Service Inc.*, 750 F.Supp.2d 694, 707-08 (E.D.La. 2010) (J. Vance) (and cases cited therein).

14

In this case, the LUTPA violations alleged by defendants include the breach of the March 12, 2014, settlement agreement, the frivolous invoices sent through September 2014 by plaintiff after the breach through September 2014, and the initiation of this lawsuit. *See* Rec. Doc. 10 at 7. Plaintiff contends all of its alleged conduct following March 12, 2014, merely constituted efforts to enforce a disputed settlement agreement and therefore the continuing tort doctrine does not apply to defendants' counterclaim. *See* Rec. Docs. 23 at 6-7 and 31 at 2-3.

The Court is unable to conclude from the pleadings that defendants have not alleged a continuous tort and therefore finds dismissal on the grounds of peremption inappropriate, at least at this time. The parties offer competing descriptions of the March 2014 settlement agreement and how it was breached. For the purpose of pleadings, defendants have alleged an unfair practice that not only includes a breached settlement agreement, but also subsequent frivolous billing. *See* Rec. Doc. 10 at 7. It is clear from the pleadings that plaintiff continued to bill defendants through September 2014, with by far the largest invoices submitted after July 23, 2014—one year before defendants filed their counterclaim. *See* Rec. Doc. 1-4 at 15-16. At this time, the Court is unwilling to dismiss defendants' LUTPA counterclaim on the grounds that the only alleged LUTPA violation predated defendants' counterclaim by one year.

15

iv.     Attorney General Action

Finally, plaintiff argues that defendants cannot obtain treble damages, because they did not first bring their complaint to the Louisiana Attorney General. *See* Rec. Doc. 11-1 at 12-13. This very well may be; however, as far as the Court is aware, this fact would go to the question of damages, not whether or not defendants' claim should be dismissed altogether. *See* La. R.S. § 51:1409. Accordingly, the issue need not be addressed on a Rule 12(b)(6) motion. *See Landrieu Const., Inc. v. DRC Emergency Services, LLC*, Civ. A. No. 09-3418, 2010 WL 1817768 (E.D. La. Apr. 30, 2010) (J. Fallon) (treble damages issue addressed at summary judgment). Accordingly,

**IT IS ORDERED** that plaintiff's motion to strike is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** and plaintiff's fraud claims are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss with prejudice is **GRANTED IN PART** as to defendants' Rule 11(b) and abuse of process counterclaims and **DENIED IN PART** as to defendants' LUTPA counterclaim; defendants' Rule 11(b) and abuse of process claims are **DISMISSED** with prejudice.

New Orleans, Louisiana, this 5th day of February, 2016.

UNITED STATES DISTRICT JUDGE